## 𝔖taunton

### ALEX GOTTLIEB, TRADING AS SAVEMORE SUPER MARKET v. LORENE A. ANDRUS.

September 10, 1958.

Record No. 4810.

Present, Eggleston, C. J., and Spratley, Buchanan, Miller, Whittle and Snead, JJ.

The opinion states the case.

*Preston P. Taylor* and *Harry N. Gustin* (*Taylor, Gustin & Harris*, on brief), for the plaintiff in error.

*George H. Gray* (*Grover C. Outland, Jr.; Outland & Gray*, on brief), for the defendant in error.

BUCHANAN, J., delivered the opinion of the court.

The plaintiff, Mrs. Lorene A. Andrus, fell and was injured in the store of the defendant, Alex Gottlieb, trading as Savemore Super Market. She brought this action for damages alleging that her fall was caused by a box which the defendant had negligently allowed to remain in the aisle of the store, which she had entered to make a purchase. A trial by jury resulted in a verdict in her favor for $5,000 on which the court entered the judgment which the defendant now seeks to have reversed. The errors assigned were that he was not negligent, that the plaintiff's injuries were due to her own negligence, that the court erred in giving an instruction for the plaintiff and in refusing to declare a mistrial for improper argument by plaintiff's attorney.

The only evidence for the plaintiff as to how the accident happened was given by the plaintiff herself, who testified as follows:

She entered the store about 6:30 p.m. on September 18, 1956, to purchase food needed for breakfast. She had never been in this super market before. There was a man standing near the front who seemed to be a clerk. She asked him if he would help her find two or three items she wanted. He replied that she would "find the cereal in this aisle," which he pointed out. She started down the aisle to find the box of cereal. There were different brands in the shelves and she "seemed to be too close to detect the name of the cereal"; she "was trying to find first bran, a box of flakes," and "was looking along the cereal counter." When she reached a point where she could see what she was looking for, she "took a step backwards * * trying to see," and her "heel or foot struck something and I went back over and fell and I was picked up, and there were boxes on the floor." She testified that her heel struck a box and that after she was picked up she saw the boxes which "seemed like they were not stacked on each other but spread out over the floor." She did not think her falling made them scatter. They were pasteboard boxes, she thought.

On cross examination she was asked whether she had a clear view as she walked down the aisle and she replied, "I was seeing the cereal as I walked down the aisle." She walked, she said, on her left side of the aisle and the cereal was on that side. She was asked if the boxes she referred to were not stacked over against the food shelf on her right-hand side of the aisle and she replied, "I don't think they were. * * I would say they were covering the floor."

She said she thought she had reached for the cereal when she fell but had not touched it.

Questioned by the court she said she did not see the boxes she fell on before she fell "because I was not looking at the floor," and then in response to questioning by defendant's counsel she said she did not pay any attention to the boxes after she fell.

The defendant introduced a picture of the aisle where the accident occurred. This aisle was about six feet wide with flooring of asphalt tile blocks some nine inches square in alternate dark and light colors. On each side were shelves taller than the plaintiff, she said, and filled with merchandise.

There were three witnesses for the defendant. All testified that the boxes in the aisle were pasteboard cartons and were stacked against the counter on the opposite side from the cereal. At the time of the accident two of these witnesses, then employees of defendant, were engaged in removing boxes of cereal from these cartons and placing them on the cereal shelf. There were probably ten or twelve of these cartons and they were about eighteen inches square, lined up one deep and extending approximately eighteen inches into the aisle on the opposite side from the cereal shelves. They were stacked not more than two high, some smaller ones on top of larger ones. One of these employees said the cartons were all full but the other testified that some were empty and stuck into each other.

All three of defendant's witnesses, none of whom was employed by the defendant at the time of the trial, testified that they saw the plaintiff fall and that she did not touch any of these boxes before she fell; that she took the box of cereal off the shelf and fell as she turned to go back up the aisle; that as she started falling she was at least three feet from these boxes or cartons. Two of these witnesses testified that after the plaintiff fell she said she did not know what caused her to fall, and one of them said it appeared to him she turned her ankle. The two witnesses who were putting the cereal in the shelves testified that they were working five or six feet apart and that the plaintiff was between them when she reached for the cereal and when she fell. One of the witnesses, the store manager, testified that after the plaintiff took the cereal from the shelf she turned to come back up the aisle and "as she turned she gave way and fell," and that he thought she had on high heels.

The plaintiff in rebuttal testified that she made no statement at all to the two employees after she fell and that at the time of the

accident she was wearing sport shoes with very low heels. On further cross examination she said the boxes were on the opposite side of the aisle from the cereal shelf and sitting out in the floor a little; but a few answers later she said, "The boxes that made me fall were at my feet at the cereal counter. * * The boxes were underneath my feet where I was standing. * * I saw the boxes after they lifted me to my feet." They were "right at the cereal counter at my feet."

The plaintiff was an invitee and the defendant owed to her the duty of using ordinary care to have his premises reasonably safe for her visit. In the exercise of ordinary care the defendant was required to warn the plaintiff of latent dangers which were or should have been known to him and which were unknown to the plaintiff. But no notice or warning was required if the alleged dangerous condition was open and obvious to a person exercising reasonable care for his own safety. *Atlantic Company* v. *Morrisette*, 198 Va. 332, 333, 94 S. E. 2d 220, 222; *Montgomery Ward and Co.* v. *Young*, 195 Va. 671, 79 S. E. 2d 858; *Crocker* v. *WTAR Radio Corp.*, 194 Va. 572, 74 S. E. 2d 51; *Knight* v. *Moore*, 179 Va. 139, 18 S. E. 2d 266.

Without knowledge or warning of danger, an invitee may assume that the premises are reasonably safe for his visit. He is not required to be on the lookout for dangers not open and obvious; " 'but notice is not required where the dangerous condition is open and obvious to a person who is exercising reasonable care for his own safety. * *' " *Comess* v. *Norfolk General Hospital*, 189 Va. 229, 235, 52 S. E. 2d 125, 128.

The plaintiff, possessed of a jury verdict approved by the trial court, is of course entitled to have the evidence considered in the light most favorable to her. When that is done it must be sufficient to establish negligence on the part of the defendant as the sole proximate cause of her injuries. If it appears that she failed to exercise reasonable care and that such failure was a contributing cause of the accident, she is not entitled to have damages from the defendant.

We need not stop to ascertain whether the defendant was negligent. His counsel in oral argument expressed the view, with some generosity perhaps, that the evidence was sufficient to take that question to the jury. We pass then to the question of whether as a matter of law the plaintiff was guilty of contributory negligence, which in turn depends on whether the danger complained of was open and obvious to a person exercising reasonable care for his own safety.

The plaintiff was undecided in her testimony as to whether the boxes were on the opposite side of the aisle from the cereal counter, as the defendant's witnesses maintained, or at her feet at the cereal counter, as she also asserted. However, she consistently stated that she did not see them before she fell, giving as her reason that she was not looking at the floor.

It is not questioned that the aisle which the plaintiff entered and along which she walked was adequately lighted. She could read the labels on the boxes in the shelves. If the boxes were against the shelving across the aisle from where the plaintiff reached for the box of cereal, as claimed by the defendant's witnesses, and as also stated by the plaintiff in part of her testimony, and if in that position they created a danger from which it could reasonably be anticipated that injury might result, such danger was entirely open and obvious to the plaintiff or any other customer of ordinary vision.

If, on the other hand, the boxes were at the plaintiff's feet at the cereal counter, as she testified, they were even more open and obvious. In either case a glance down the aisle as she first entered it, or at any point as she walked along, would have shown her the boxes on the floor, whether they were on her left or on her right of the six-foot aisle. Not only were the boxes there in plain view but in front of her also were the two employees of the store removing smaller boxes of cereal from these boxes on the floor and putting them on the cereal shelves on the plaintiff's side of the aisle, and she walked between these two men to reach for the box of cereal she wanted. She could not, in the exercise of ordinary care, close her eyes, which was the equivalent of what she said she did, and walk down this aisle without regard to open and obvious articles in it which would have been apparent to her had she looked even casually on entering the aisle or at any time before she fell.

We think it is clear that the plaintiff's own negligence contributed to her injury and bars her recovery. "One cannot charge another in damages for negligently injuring him when his own failure to exercise due and reasonable care was responsible for the occurrence of which he complains." *Flakne v. Telephone Company*, 199 Va. 31, 34, 97 S. E. 2d 650, 652.

That being true, it is unnecessary to discuss the remaining assignments of error.

*Reversed and final judgment.*