# Richmond

## PRESBYTERIAN SCHOOL OF CHRISTIAN EDUCATION, INCORPORATED, ET AL. v. DOROTHY B. CLARK.

April 27, 1964.

Record No. 5744.

Present, Eggleston, C. J., and Whittle, Snead, l'Anson and Carrico, JJ.

*Frank O. Meade* (*Edwin B. Meade; Meade, Tate & Meade*, on brief), for the plaintiffs in error.

*C. Stuart Wheatley* (*Talbott, Wheatley & Talbott*, on brief), for the defendant in error.

WHITTLE, J., delivered the opinion of the court.

This is an action by Dorothy B. Clark against Presbyterian School of Christian Education, Incorporated, et al., for personal injuries sustained when she walked into a plate glass panel adjacent to the doors of the entranceway to defendants' office building in the city of Danville.

The jury returned a verdict in favor of Mrs. Clark, upon which

judgment was entered over the objection of the defendants. The questions involved, say the defendants, are;

"(1) Did plaintiff prove primary negligence on the part of the defendants?"

"(2) Was plaintiff guilty of contributory negligence as a matter of law?", and

"(3) Did the trial court err in giving Instruction 1 for the plaintiff over objection of the defendants, and in refusing Instruction C-2 offered by the defendants?"

We are of the opinion that it is only necessary for us to consider question No. 2, i.e., "Was plaintiff guilty of contributory negligence as a matter of law?"

We hold that she was.

The record discloses that Mrs. Clark was the owner and operator of a travel agency in Danville, possessed of all her faculties, with a 20-20 vision without glasses; she was 44 years of age. At approximately 11:00 o'clock on the morning of March 6, 1961 she entered the building for the purpose of filling an appointment with her dentist. After the appointment she undertook to leave the building and return to her office when she walked into and smashed a plate glass panel adjacent to the front doors of the building, at which time she sustained the injuries complained of.

The Arcade Building fronts on the northern side of Main Street in the business district of the city. It is a two story office building with a wide hall or arcade running from the front to the back on the ground floor, with a similar hallway on the second floor over the arcade and with offices opening on the hallways. The front of the arcade on the ground floor is separated from the outside by a partition made of plate glass one quarter inch thick, supported by aluminum framing with customary dual doors in the center and plate glass panels adjacent on each side and above.

Each of the doors is identical and they open separately or together, swinging from the center out. They are framed with aluminum top, bottom and side rails. The bottom rails of the doors are higher than the bottom aluminum strips of the adjacent panels. The width of the doors and the adjacent panels is approximately the same. There is an aluminum cross-bar waist high constructed across each door. Above the cross-bar on the siderail of each door next to the vertical line of juncture of these doors is written the word "push" for persons makings their exit from the building. There are aluminum plates

10 x 8 inches on the outside of each door, slightly higher than the cross-bar on the inside of the door, on which plates the word "pull" is seen. There are no cross-bars, plates, or writings on the adjacent plate glass panels. Photographs of the entrance depict clearly the construction of the doors and panels as they existed at the time of the accident.

Plaintiff was the only witness to the accident. She testified that she had visited the Arcade Building on at least two occasions in August or September of 1960, prior to the date of the accident on March 6, 1961; that on the day of the accident she walked into the hallway of the building through an open door on her way to the office of the dentist on the second floor; that after her dental appointment she attempted to make her exit from the building, proceeding towards the same entrance through which she had entered earlier.

Mrs. Clark testified that she did not wear glasses and that her vision was 20-20; that the dentist gave her no pain reliever; that she was in the same state of health when making her exit as she was when she entered the building; that no obstruction interfered with her passing along the hallway and that the sun was not in her eyes as she walked towards the entrance. She stated that she looked straight ahead and as she approached the entrance it appeared to her and she was under the impression that there "was three doors, two open, one on the left, one on the right"; that there was the open door on her left through which she had entered the building, a closed door next to this open door on her left and an open door (the panel) on her right through which she attempted to pass; that she was amazed to find that there was no third door, but that what she took to be a door on her right was a plate glass panel; that when she walked into this panel it shattered and she received a bruise on her forehead and various cuts about her right hand and her legs.

Several witnesses testified in regard to the construction of the entrance. David L. Ragland, Jr., an architect, testifying for Mrs. Clark, stated that he had observed the entranceway at the Arcade Building; that "it is a typical—what they call a thin line aluminum entrance doorway", * * * "encountered practically everywhere you go" and that the photographic exhibits gave a good picture of the physical structure. He suggested that to keep people from walking through the panels it would be good practice to stand something in front of "that pane of glass" which "will differentiate the panels from

the door". He conceded that there were several distinguishing features in the construction of the entrance to the Arcade Building which would differentiate the doors from the panels.

H. W. Thompson, another Danville architect, called by the defendants, testified that he had designed fronts of stores similar to the front of the Arcade Building and he listed the distinguishing features differentiating the doors from the panels. He stated that the design of the entrance to the building was standard and accepted by architects as good construction.

P. L. Anderson, Jr., a Danville contractor, called by the defendants, testified that the plate glass entranceway to the building was sub-contracted by him to the Pittsburgh Plate Glass Company and that he and the company worked together in designing and installing the entranceway. Anderson also enumerated the distinguishing features between the doors and the panels and he further testified that this type of construction is standard, accepted construction among architects.

From the testimony of witnesses and from the picture exhibits showing the entrance to this building, it is obvious that the entrance is typical of entrances one sees in business districts everywhere.

On cross examination Mrs. Clark was asked:

"Q. Which door was open?"

"A. The cross-bar does not show if the door was open. The only time you can see that bar is when the door is closed."

"Q. If the right hand door as you go out was open and pinned back, you could see that bar through the clear glass?"

"A. You could if you were just looking for every little thing, but when walking out a door you don't pay any attention."

Mrs. Clark admitted that the pictures filed as exhibits gave a true representation of this view of the entranceway visible to her when she walked along the hall to make her exit. Her testimony on cross examination is as follows:

"Q. We know there wasn't a door on the right. I am asking if you saw what was open when you approach the doors?"

"A. I thought there was a door on the right-hand side that was open."

"Q. I am asking if you saw any door actually open?"

"A. I didn't actually see the door open. It was open as far as I was concerned."

Mrs. Clark may have been looking straight ahead, as she testified,

when she struck the glass panel, but if she did not see what was open and visible, she was not looking effectively. She will not be heard to complain about an open, obvious and visible condition which she saw or should have seen in time to save herself. She was either not looking or she was looking blindly, carelessly and ineffectively. Her failure to look effectively cannot be laid to the door of defendants. Plaintiff was guilty of negligence which was the sole proximate cause of her injuries. Her case can rise no higher than she makes it.

If it can be said that the defendants were in any way negligent on this occasion, which they vigorously deny, Mrs. Clark was guilty of contributory negligence as a matter of law. This case is similar to the recent case of *Snyder* v. *Ginn,* 202 Va. 8, 11 (1960), 116 S.E. 2d 31, 33. In the *Ginn* case the plaintiff, thinking her way was clear, walked into the plate glass panel on the left side of the inside door of the vestibule of defendant's store and was injured. In reviewing the judgment on the jury's verdict in the trial court we said "An examination of the picture of the doorway plainly discloses that the situation and condition of the inside doors were completely open and obvious to any person who was looking in their direction.

"In *Knight* v. *Moore,* 179 Va. 139, 18 S.E. 2d 266, we reviewed and discussed the principles governing the liability of the owner of premises to invitees. There we said that the owner of premises is not an insurer of the invitee's safety thereon. He must use ordinary care to render the premises reasonably safe for the invitee's visit, and notice of an unsafe condition is not required where that condition 'is open and obvious, and [is] patent to a reasonable person exercising ordinary care for his own safety.' (179 Va., *supra,* 145, 146).

"In this connection, see also *Williamsburg Shop* v. *Weeks,* 201 Va. 244, 110 S.E. 2d 189, where we held that a storeowner is required to exercise reasonable care to see that his premises are kept in a reasonably safe condition for use of an invitee; but that an invitee on his premises could not close her eyes and walk on the premises without regard to open and obvious conditions, apparent to anyone who looks, and expect to recover for an injury thereby sustained."

" * * * (T)he evidence shows, without conflict, that the injury sustained by Mrs. Ginn was due to her own thoughtlessness or lack of care. The conditions around the doorways were open and obvious, and Mrs. Ginn would not have suffered the injury sustained by her had she exercised ordinary care in looking ahead as she started

to walk from the store. Consequently, she was the author of her own misfortune." See also *Gall* v. *Tea Company*, 202 Va. 835, 837, 120 S.E. 2d 378, 380; *Tea Company* v. *Rosenberger*, 203 Va. 378, 380, 124 S.E. 2d 26, 28; *Rosenberg* v. *Hartman*, 313 Mass. 54 (1943), 46 N.E. 2d 406.

It is clear to us that the sole proximate cause of plaintiff's injury was her failure to see that which by the exercise of reasonable care she should have seen. *Rosenberg* v. *Hartman, supra; Crawford* v. *Given Brothers*, Tex. Civ. App. (1958), 318 S.W. 2d 123, 124; *Pettigrew* v. *Nite-Cap, Inc.* (Fla. 1953), 63 So. 2d 492, 493. See also annotation in 68 A.L.R. 2d, p. 1204 *et seq.*; A.L.R. Digest, Negligence, § 72.

For the reasons stated the judgment complained of is reversed, the verdict of the jury set aside and final judgment is here entered for the defendants.

*Reversed and final judgment.*