Lydia S. NUCKOLES, Appellant,

v.

F. W. WOOLWORTH COMPANY,
Appellee.

No. 10544.

United States Court of Appeals
Fourth Circuit.

Argued Nov. 3, 1966.

Decided Jan. 12, 1967.

Philip Lee Lotz and George M. Cochran, Staunton, Va., for appellant.

R. W. Smith, Staunton, Va. (Wayt B. Timberlake, Jr., and Timberlake, Smith & Thomas, Staunton, Va., on brief), for appellee.

Before BRYAN, WINTER and CRAVEN, Circuit Judges.

CRAVEN, Circuit Judge:

This is a negligence case brought in a Virginia state court and removed to the federal district court by reason of diversity of citizenship. We are to apply the law of Virginia.[1]

Counsel agree that the sole question presented is whether or not the plaintiff, Mrs. Lydia S. Nuckoles, was contributorily negligent "as a matter of law." There is no disagreement as to the rule of law or standard of conduct by which Mrs. Nuckoles is to be judged. We are not required to attempt, as we sometimes must, interpretation of a difficult state statute; nor need we attempt, albeit without finality, exposition

---

1. But whether plaintiff presented sufficient evidence to take her claim to the jury has been said to be a matter of federal law. General Motors Corp. v. Muncy, 367 F.2d 493, 498 (5th Cir. 1966).

of a portion of the state's "unwritten" law—not yet declared by its highest court. This is one of those cases, then, "where the controversy turns not upon the rule of law, but upon its application to the facts." [2] Such cases "provoke difference of opinion among judges." [3]

Although "very much impressed" with defendant's motion for a directed verdict, the trial judge denied it, and thereafter set aside the $3,000.00 verdict in favor of the plaintiff and entered judgment n. o. v. for the defendant on the ground that plaintiff was contributorily negligent as a matter of law.[4] The district judge wisely adopted this stratagem for the stated purpose of enabling this court to end the litigation by reinstatement of the jury's verdict in the event of our disagreement with his decision. We do disagree and reverse.

On June 21, 1962, Mrs. Nuckoles, aged seventy, accompanied by her daughter, went shopping in the Woolworth store in Staunton, Virginia. While walking in a well-lighted aisle fifty-two inches wide, she stepped into or against the side of a pasteboard box negligently left in the aisle by the clerk on duty. Mrs. Nuckoles partly fell into one of the thirty-three-inch-high counters, scraping her elbow and seriously injuring her left ankle.

A Woolworth clerk testified that she was taking yarn out of the box and placing it on the counter and that she was distracted from this job by a phone call or another customer. She then said: "[J]ust as I left she [Mrs. Nuckoles] must have came around and tripped and when I turned back I saw her."

The box was thrown away and was not available at the trial. Efforts to describe the box were imprecise, but the testimony tended to show that it was of a color that blended in with the floor.

That the clerk's position with respect to the box may have obstructed Mrs. Nuckoles' vision of it is a matter of permissible inference. It is true that Mrs. Nuckoles said that nothing obstructed her vision as she walked down the aisle, but she also said that she saw the clerk who then may have been engaged in removing yarn from the box. The jury may have inferred that the clerk's body concealed the box until she left to answer the phone, at which time Mrs. Nuckoles was within a few feet of her. Such an inference is consistent with Mrs. Nuckoles' testimony at one point in the record that "when I got that close [two or three feet] to the clerk I didn't look down." Most people do not bow their heads and look at their feet while shopping in a store, nor has the Supreme Court of Appeals of Virginia ever prescribed such a standard of care. Instead, the court has noted that shoppers and even floor managers are attentive to counter displays of merchandise. Shiflett v. M. Timberlake, Inc., 205 Va. 406, 407, 137 S.E.2d 908, 910 (1964); Miracle Mart, Inc. v. Webb, 205 Va. 449, 451, 137 S.E.2d 887, 889 (1964).

The defendant relies heavily upon Gottlieb v. Andrus, 200 Va. 114, 104 S.E.2d 743 (1958), which we think is factually distinguishable. In that case, the plaintiff, shopping in a grocery store, did not see (until after she fell) *ten* or *twelve* eighteen-inch-square cereal boxes in the aisle. She did not notice the boxes despite the fact that she actually walked between two employees who were then emptying them and putting merchandise on the shelves. Ten or twelve boxes in the process of being emptied by two employees may well have been "open and obvious" to the plaintiff, and her failure to observe them may have amounted, in the words of the Supreme Court of Appeals of Virginia, to plaintiff having "close[d] her eyes, which was the equivalent of what she said she did, and walk[ed] down this aisle without regard to open and obvious articles in it which would have been apparent to her had she looked even casually

2. Cardozo, The Nature of the Judicial Process 163 (1921).

3. Id. at 165.

4. The authority to order judgment notwithstanding the verdict in federal courts is provided in Fed.R.Civ.P. 50.

on entering the aisle or at any time before she fell." 200 Va. at 118, 104 S.E. 2d at 747. We do not think that the failure of the plaintiff in our case to note the presence of *one* box of undefined size but of the same color as the floor, and which might have been concealed by the presence of the clerk until plaintiff was nearly upon it, is so factually similar to *Gottlieb* as to *require* the conclusion that Mrs. Nuckoles' failure to observe the box constituted contributory negligence.

We think what was said in Shiflett v. M. Timberlake, Inc., 205 Va. 406, 137 S.E.2d 908 (1964), is pertinent to the instant case. In *Shiflett*, the Supreme Court of Appeals of Virginia noted that the plaintiff was looking at a bright display on the counter. She failed to see an accumulation of water on the floor. In reversing judgment n. o. v. for the defendant, the Supreme Court of Appeals, citing Crocker v. WTAR Radio Corp., 194 Va. 572, 74 S.E.2d 51 (1953), said: "Whether the situation was so open, obvious and patent to the plaintiff that in the exercise of ordinary care she should have observed it, was for the jury." 205 Va. at 411, 137 S.E.2d at 912.

In *Crocker,* the plaintiff failed to notice different floor levels, the floors varying in height four to six inches. In reversing judgment for the defendant, the Supreme Court of · Appeals of Virginia noted that the situation was "open" to the plaintiff in the sense that there was no obstruction between her and the step, but that it was not necessarily "obvious" to her.

We think the instant case resembles Miracle Mart, Inc. v. Webb, 205 Va. 449, 137 S.E.2d 887 (1964). In that case the assistant manager of the men's wear department invited the plaintiff to walk down the aisle to examine an article she was interested in purchasing. The assistant manager himself testified that he did not see the foreign substance on the floor because he was not looking down at the floor but was looking around for the desired merchandise. Since the

plaintiff was following the assistant manager, the jury was permitted to infer that his presence in front of her might have completely blocked her view so as to excuse her from seeing the foreign substance on the floor.

■■ Generally, the question of contributory negligence is "for the jury when it arises upon a state of facts from which reasonable men might draw different conclusions either as to the facts *or the conclusions or inferences to be drawn from the facts.*" 38 Am.Jur. Negligence § 348, at 1052 (1949). [Emphasis added.] The question in this case is not a question of law but is simply a question of judgment or opinion with respect to the facts. See 9 Wigmore, Evidence § 2495 (3d ed. 1940). When we say that the question has become one of law for the court, what we mean is that it is a question of fact upon which reasonable minds could *not* differ and will, therefore, be decided by the judge rather than by the jury. Ibid. "The ruling will, in truth, depend entirely on the nature of the evidence offered in the case in hand; and it is seldom possible that a ruling can serve as a precedent." Id. § 2494, at 296. "Unfortunately the inevitable tendency to crystalize the law into mechanical rules has lead the courts in many cases to treat such precedents as fixing definite rules of universal application. Almost invariably the rule has broken down in the face of the obvious necessity of basing the standard upon the particular circumstances, the apparent risk and the actor's opportunity to deal with it." Prosser, Torts § 37, at 210 (3d ed. 1964).

Not even a Mr. Justice Holmes can lay down a standard once for all as he purported to do in establishing the rule that a motorist must stop, look, and listen at a railroad crossing—and even get out of his vehicle if necessary to determine whether a train is dangerously near. The standard laid down in Baltimore & O. R. R. v. Goodman, 275 U.S. 66, 48 S.Ct. 24, 72 L.Ed. 167 (1927), lasted only seven years and was "limit-

ed" and effectively overruled in Pokora v. Wabash Ry., 292 U.S. 98, 54 S.Ct. 580, 78 L.Ed. 1149 (1934).

Since then, the so-called Holmes view —that standards of conduct ought increasingly to be fixed by the court for the sake of certainty [5]—has been largely rejected. 2 Harper & James, Torts § 15.5, at 891 (1956). The tendency has been away from fixed standards and towards enlarging the sphere of the jury. Id. § 15.4, at 883, § 17.2, at 972, § 22.10, at 1228.[6]

■ Whether Mrs. Nuckoles exercised that degree of care in looking for hazards in her path that a reasonably prudent woman seventy years old with the vision of a person her age should have exercised was a proper question for jury determination on the evidence in this case. That she did *not* do so is not so plainly established that reasonable minds cannot be in disagreement.

Judgment for defendant reversed; on remand, the district court will enter judgment on the verdict for plaintiff.

Reversed and remanded.

WINTER, Circuit Judge (dissenting):

To reinstate a verdict that at least raises a question of whether there has been an abuse of our diversity jurisdiction,[1] my brothers draw from the evidence an inference which, to my mind, the record will not support. As I read the record and applicable Virginia decisions, I conclude, with the district judge, that the plaintiff was guilty of contributory negligence, as a matter of law.

The accident occurred in a store characterized by appellant as brightly lighted and shown by photographs, acknowledged by all fairly to depict conditions as they existed at the time of appellant's fall, as a modern, spacious, attractive store where visibility was at its maximum. The offending object, the box, admitted by appellant to have been "out in the aisle" and not "against the counter," was not of a size "undefined" or totally "imprecise." Appellant, in a pretrial deposition when her recollection was presumably fresher than at the time of trial, said, *as her counsel stipulated,* that it was two feet long, one and one-half feet wide, and four to six inches deep. To say its color was the "same" as, or one that "blended" with, the floor, is to understate the physical evidence. The photographs of a similar box in place show an open, apparent, readily discernible object, obvious to anyone who took the trouble to look.

Despite the majority, appellant's vision of the box could not have been obscured by the presence of the clerk. As appellant went down the aisle, she saw the clerk at the end of the aisle, but the clerk by then had gone away from the box. The clerk had been transferring

**5.** See Holmes, The Common Law 110–12 (1945), for a statement of Mr. Justice Holmes' position.

**6.** Professor James, in his new work on civil procedure, observes that:
"There has been a school of thought (Holmes was its leading mentor) which would have the courts increasingly particularize the rules or standards of conduct for people to follow in recurring situations. This view would make itself felt through manipulation of the concept of sufficiency of evidence * * * and be implemented by the more frequent granting of the motions [of nonsuit, directed verdict, dismissal, and judgment n. o. v.] * * *. This school of thought has lost ground in the present century, especially in personal injury tort cases." James, Civil Procedure § 7.13, at 286 (1965).

**1.** The suit was initiated in a state court. Based upon diversity of citizenship and an ad damnum of more than $10,000.00, exclusive of interest and costs, removal was had to the district court. While diversity and the ad damnum would support removal, astute questioning at a pre-trial conference might well have revealed that a scraped elbow and a sprained ankle could not, in good faith, be said to be worth more than $10,000.00, exclusive of interest and costs.

the contents of the box to the counter and had placed the box on the floor.[2]

The clerk testified that she discontinued her task and went away from the box because her attention was diverted by another customer or the telephone. Appellant did not claim that she saw the clerk move away. Appellant's testimony that she saw the clerk must thus relate to when the clerk had moved away from the box. Appellant says the accident happened as she was walking toward the clerk, *but three feet before she reached her*. Appellant's counsel did not argue the inference that the majority creates to save her recovery. Appellant's daughter, who followed her down the aisle, was clear that no one else was present in it. Appellant offered no explanation why she failed to see the box except that she was heedless of her own safety. She was questioned, and replied:

"Q. There was nothing to prevent you from seeing the box if you had looked, was there?

"A. No, I imagine if I would have looked down, I imagine I would have seen the box, but I didn't. I had my eyes on the clerk, I was beating it to her."

I, therefore, cannot infer that the clerk obscured the box. If I did so I would also infer that the clerk, from time to time, stooped or bent over to reach the contents of the box, in which event appellant's actual or constructive notice of an object on the floor would have been beyond dispute.

In performing my duty to apply the Virginia law as I find it, I cannot distinguish Gottlieb v. Andrus, 200 Va. 114, 104 S.E.2d 743 (1958). There, holding a plaintiff who tripped over a carton of cereal boxes in the aisle of a supermarket guilty of contributory negligence as a matter of law, the Court applied the familiar rule that a defendant owes an invitee a duty to use ordinary care, and that ordinary care requires a warning of latent dangers unknown to the plaintiff, but " * * * no notice or warning was required if the alleged dangerous condition was open and obvious to a person exercising reasonable care for his own safety." Id., 104 S.E. 2d p. 746. There was evidence in the case that more than one box of cereal was on the floor, as, indeed, there was evidence that plaintiff had passed clerks unloading cartons of cereal and placing them on shelves, but a carton of boxes of cereal, as distinguished from a box of yarn, was not the crux of the decision, as the following quotation demonstrates:

" * * * If the boxes were against the shelving across the aisle from where the plaintiff reached for a box of cereal * * * and if in that position they created a danger from which it could reasonably be anticipated that injury might result, such danger was entirely open and obvious to the plaintiff or any other customer of ordinary vision.

"If, on the other hand, boxes were at the plaintiff's feet at the cereal counter, as she testified, they were even more open and obvious. *In either case a glance down the aisle as she entered it, or at any point as she walked along, would have shown her the boxes on the floor, whether they were on her left or on her right of the six-foot aisle.* Not only were the boxes there in plain view but in front of her also were the two employees of the store removing smaller boxes of cereal from these boxes on the floor and putting them on the cereal shelves on the plaintiff's side of the aisle, and she walked between these two men to reach for the box of cereal she want-

---

2. The clerk's testimony was as follows:
"Q. Was there room on the counter to set this box where you put the yarn into the compartments?
"A. I was putting the yarn in rows and the box would have gotten in my way.

"Q. You could have moved it from right or left where you were working could you not?
"A. The counter really isn't very high. All of the extra I put under the counter so it was more convenient to do it like that."

ed. *She could not, in the exercise of ordinary care, close her eyes, which was the equivalent of what she said she did, and walk down this aisle without regard to open and obvious articles in it which would have been apparent to her had she looked even casually on entering the aisle or at any time before she fell.*" (emphasis supplied) 104 S.E.2d, at p. 747.

I cannot combine the language of the opinion that I have emphasized with appellant's testimony "If I would have looked * * * I would have seen, but I didn't," corroborated by the physical evidence, and reach the result that she may recover. True, the Supreme Court of Virginia has not said that people must bow their heads and look at their feet while shopping. It has said only that they may not close their eyes and walk down an aisle without regard to the obvious—the very thing that appellant says she did. Virginia has not receded from the stringency of this rule. Indeed, in more recent decisions, Virginia has denied recovery to plaintiffs who walk into glass panels adjacent to glass doors. Presbyterian School of Christian Ed., Inc. v. Clark, 205 Va. 153, 135 S.E.2d 832 (1964); Snyder v. Ginn, 202 Va. 8, 116 S.E.2d 31 (1960).

Shiflett v. M. Timberlake, Inc., 205 Va. 406, 137 S.E.2d 908 (1964); Miracle Mart, Inc. v. Webb, 205 Va. 449, 137 S.E.2d 887 (1964); and Crocker v. WTAR Radio Corp., 194 Va. 572, 74 S.E.2d 51 (1963), cited by the majority, are distinguishable. In *Shiflett* and *Crocker*, there was a jury question whether the hazard was so open and obvious that it could be recognized as such by one who looked—in *Shiflett*, water on the floor where the plaintiff said she looked but which she could not see; and in *Crocker*, an undiscernible 4–6 inch difference in floor level of a highly polished homogeneous floor. As we recently observed in Gauldin v. Virginia Winn-Dixie, Inc., 370 F.2d 167 (4 Cir. 1966), *Miracle Mart* turned on the fact that the plaintiff was preceded down the aisle by a store employee, who obstructed her view, and who traversed the allegedly hazardous foreign substance on the floor without incident. The operative facts in these cases are in marked contrast to appellant's testimony and the physical evidence in the case at bar.

Concluding that under Virginia law appellant was guilty of contributory negligence as a matter of law, I respectfully dissent.