**A. C. CAREY and Utica Mutual Insurance Company**

**v.**

**UNITED STATES of America.**

**No. C–73–G–58.**

United States District Court
M. D. North Carolina,
Greensboro Division.

May 19, 1960.

Bynum Hunter, Tom C. Hoyle, Jr., Greensboro, N. C., for plaintiffs.

James E. Holshouser, U. S. Atty., J. Robert Wills, Asst. U. S. Atty., Greensboro, N. C., for defendant.

HAYES, District Judge.

This is an action brought by plaintiff, Carey, and his Workmen's Compensation Insurance carrier, Utica Mutual Insurance Company, to recover damages from the defendant because of an injury which Carey sustained while working on the premises of the defendant at Fort Bragg, North Carolina, on May 1, 1956. The army headquarters at Fort Bragg had entered into a contract for certain work to be done on the barracks at Fort Bragg, which included the insulation of the buildings, and calling for insulation to be made under the floor of the buildings.

The prime contractor sublet to Insulation Industries, Inc., the contract respecting insulation, and Carey was an employee of this company and was working

underneath the building of barracks No. T9–353 in the performance of his duties, when his knee contacted an object that later was identified as a dud projectile known as a 37 mm projectile. This type of ammunition was used extensively at Fort Bragg until 1942, but was not used thereafter. The projectile was in a cartridge, and upon the firing of the cartridge the projectile was hurled at various ranges from one thousand (1,000) to four thousand (4,000) yards. Although the army made efforts to recover and remove live ammunition from its premises, it was well known to the army officials that this and other types of live ammunition were likely to be found anywhere on the premises. It was customary for the army to have grounds thoroughly investigated and freed from live ammunition before erecting buildings on its premises, but in spite of this it was known to army officials that there was likelihood of the presence of live ammunition to be found or encountered on its premises. These conditions were not known to the plaintiff, Carey, nor did anyone take the pains to advise him of it; and when he was engaged as a workman underneath the building and discovered this 37 mm dud, he was utterly unaware of what it was, and acting in obedience to the order of his foreman, he brought it from under the building and started to deliver it to the foreman who was nearby, but the object exploded in his hand blowing off a large portion of his right hand and a part of his wrist, and all of his fingers except the index finger and thumb.

While the defendant poses an issue of the question of its negligence, it relies more specifically on its defense of contributory negligence.

When an owner of premises on which work is to be performed, or a master who employs a servant to perform work thereon, knows of natural or artificial hazards existing on the premises where the work is to be performed, it is the manifest duty of the owner or master in such circumstances to warn the workman of the dangers to be encountered and of the means to avoid injury to himself. Batton v. Atlantic Coast Line R. Co., 1937, 212 N.C. 256, 193 S.E. 674; certiorari denied, 1938, 303 U.S. 651, 58 S.Ct. 750, 82 L.Ed. 1112. Cf. Hill v. Moseley, 220 N.C. 485, 17 S.E.2d 676; 35 Am.Jur., Master and Servant, Sec. 183; Restatement, Torts, Sec. 343; 57 C.J.S. Master and Servant §§ 600–606. This duty is a non-delegatable duty, and is not discharged by merely telling a superior to give such information to the workman. It is incumbent upon the master to see that the workman gets the warning in order to avoid injury to him. On the 11th day of May 1956, the defendant took measures then to safeguard the workmen which ought to have been taken when the work started, and which would have prevented this tragic accident if the warning had been given before instead of afterwards.

The Government contends that it was incumbent upon the worker to show that this projectile which he found under the building, and which subsequently injured him, was placed there by some agent of the United States Government acting within the scope of his authority, and relies on the authority of Porter v. United States of America, 4 Cir., 228 F.2d 389. The case however differs basically from the case here because the explosive in the Porter case was found in a trash can off of the premises of the defendant, and no evidence to show that it was placed there by any agent of the United States acting within the scope of his authority. The factual situation there renders that case inapplicable here. Nor is the Government's position strengthened by the case of United States v. Inmon, 5 Cir., 205 F.2d 681. In neither of the two cases was the injury inflicted upon a workman toward whom the United States owed the duty of providing a reasonably safe place for him to perform his labor.

The authority which sustains the holding of this court is United States v. White, 9 Cir., 211 F.2d 79.

The basis upon which a recovery for tort arises under the law of North Caro-

lina, is stated by this circuit in Brooks v. United States, 194 F.2d 185, 188 as follows:

"An owner of land, who impliedly invites another to enter for some purpose of interest or advantage to him, owes to such a person the duty to use ordinary care to have the premises in a reasonably safe condition, and to warn of hidden dangers of which he should have known. See Ellington v. Ricks, 179 N.C. 686, 102 S.E. 510; Revis v. Orr, 234 N.C. 158, 66 S.E.2d 652; Deaton v. Board of Trustees of Elon College, 226 N.C. 433, 38 S.E.2d 561."

The same position is still the law in North Carolina, as declared in the recent case of Powell v. Deifells, Inc., 1960, 251 N.C. 596, 112 S.E.2d 56.