Richard L. GLASSCOCK
v.
UNITED STATES of America.
Civ. A. No. 2148.

United States District Court
E. D. Virginia,
Alexandria Division.
March 30, 1962.

Lee C. Ashcraft and Martin E. Gerel, Washington, D. C., and Charles H. Duff, Arlington, Va., for plaintiff.

Plato Cacheris and MacDougal Rice, Asst. U. S. Attys., Alexandria, Va., for the United States.

LEWIS, District Judge.

Plaintiff was severely burned, permanently injured and disfigured while working as a lineman on a power pole owned by the United States. His claim for damages is predicated upon negligence.

The suit arising under the Federal Tort Claims Act, 28 U.S.C.A. §§ 1346(b), 2671 et seq., was heard by the Court.

The evidence discloses the Government had awarded a contract to the Seal Electric Company to convert an existing power line in Fort Belvoir, Virginia,

from 2300 to 4160 volts. The plaintiff was an employee of the Seal Electric Company. He was an experienced lineman (eight years) accustomed to working on "hot" lines. He had completed the same type of work on approximately thirty other poles; he was engaged on power pole #18 when the accident occurred. Lineman Stafford and lineman Clark were working on power pole #18 with the plaintiff. These men were in the process of replacing an old crossarm on the pole and transferring cutouts and lightning arrestors to the new arm. All equipment had been transferred to the new crossarm and was being reconnected. All exposed equipment had been covered with protective line hose, hoods and rubber blankets, linemen were wearing rubber gloves and the plaintiff was working from a safety platform, while Stafford was working from the opposite side of the pole in a higher position. Plaintiff was inserting phase conductor and lightning arrestor lead into cutout and tightening connections with a socket and ratchet handle. In performing this operation, the injured man permitted the end of his ratchet handle to enter the folds of a protective blanket, coming in contact with an existing inadequately taped split-bolt connector, causing a short circuit between two phase conductors each carrying 2300 volts of electricity.[1] Both linemen knew the lines were "hot" when they ascended the pole.

The plaintiff testified he had blanketed the two "hot" lines on his side of the pole and had secured them with wooden clamps. Stafford, his co-worker, testified the blanket covered the exposed "hot" lines to within six inches of the cutout box. Neither the plaintiff nor his co-worker gave any explanation of the cause of the flash except that it occurred while the plaintiff was tightening a bolt with the socket wrench. The metal socket wrench was about 7½ inches in length. The handle was not covered or taped.

Inspection of the pole by co-worker Stafford immediately following the accident disclosed a split-bolt connector approximately six or eight inches from the cutout box. This connector was covered with scotch tape. The rubber blanket was found on the ground after the accident. The wooden pins or clamps were neither found nor accounted for. About an inch on the end of the ratchet handle was blackened or burnt. The rubber and leather gloves worn by the plaintiff were neither blackened nor burnt.

An independent safety engineer called by the Government stated the safety measures taken by the plaintiff were good as far as they went, but that all wires and equipment within reach or falling range of the plaintiff should have been covered and secured by wooden clamps as all equipment and wires on the top of a high voltage pole are known to be dangerous.

The plaintiff's medical expenses (stipulation) amount to $14,249.70; his loss of earnings amounted to $13,206.00. His injuries were severe, resulting in a 20% permanent disability.

The plaintiff seeks recovery from the United States on the ground that it owns Fort Belvoir and the electric power line upon which the plaintiff was working at the time of the accident. He says the cause of the accident was the existing inadequately taped split-bolt connector which came in contact with the ratchet wrench he was then using; that the Government, as owner, owed him the duty of furnishing him a safe place to work. His counsel during argument and in his brief contended the Government knew the lines were "hot", therefore dangerous, and had it made a proper inspection it would have discovered the inadequately taped split-bolt connector and should have warned the plaintiff accordingly.

To support his theory of the case he relies in the main upon those sections of the National Electrical Safety Code

1. This portion of the evidence was taken from plaintiff's Exhibit 8, Report of accident by Superintendent of Seal Electric Company, approved by Col. Whitaker.

and the General Safety Requirements Manual of the U. S. Corps of Engineers, which provide for inspections of electric lines;[2] proper insulation of ends and joints of insulated conductors,[3] and upon the alleged duty of owners of the electric lines to have its wires insulated.

To support a recovery the plaintiff must prove actionable negligence against the Government. This he has not done. To constitute actionable negligence there must be a duty, a violation thereof and consequent injury.

■ Although the plaintiff in the work he was doing was the servant of Seal Electric Company, an independent contractor, he was nevertheless an invitee of the Government, the owner of the premises.

■ The owner must give notice or warning to an invitee of an unsafe condition, which is known to him and is unknown to the invitee; but notice or warning is not required where the dangerous condition is open and obvious to a person who is exercising reasonable care for his own safety. In the absence of knowledge or warning of danger, such an invitee is entitled to assume that the premises are reasonably safe for his visit. The duty to warn, however, exists only with respect to latent dangers, not to those which are or ought to be obvious to the invitee. To sustain a charge of negligence, the unsafe condition relied on must be one of which the owner knew or should have known, and the invitee did not know and could not reasonably have discovered. See Trimyer v. Norfolk Tallow Company, 192 Va. 776, 66 S.E.2d 441, and cases cited therein. See also Dillingham v. Smith-Douglass Company, 4 Cir., 261 F.2d 267.

■ When tested by these principles the plaintiff's evidence does not establish that the Government was guilty of negligence which was the proximate cause of plaintiff's injuries.

It is true the Government knew the power line carried high voltage electricity, but the plaintiff had the same knowledge. It is also true the Government did not warn the plaintiff of the inadequately taped split-bolt connector, but there was no legal duty on the Government to warn him unless its knowledge of the danger was superior to his own. 65 C.J.S. Negligence § 50, pp. 544, 545.

The Government contracted with an experienced firm to do the work. The plaintiff was an experienced lineman (eight years). He had completed the same work he was then doing on thirty other poles. He was required for his own safety to blanket all "hot" wires and apparatus within his working range prior to commencing the change-over. He says he did not see the split-bolt connector and had no knowledge of its existence prior to the accident even though it was within one foot of the place where he was working. Clearly, the evidence does not show knowledge, actual or constructive, of a hidden danger on the part of the Government superior to the knowledge of the plaintiff. His experience in this type of work, the open and obvious position of the wires, his knowledge that they carried a dangerous current, all served to acquaint him with the dangers, and a warning could only have told him what he already knew or should have known, and would have added nothing to his ability and his duty to avoid the danger which caused his injury.

■ The Government was not his employer and the doctrine of a safe place to work had no play here. Dillingham v. Smith-Douglass Company, supra.

Placing the Government, as owner of the power line, in the same category as those who engage in the production and distribution of electricity, the plaintiff fails to make a case of actionable negligence.

■ Distributors of electricity must exercise a high degree of care, commensurate with the danger involved to prevent injury to others. At places

**2.** Code Sections 211 and 213.

**3.** Code Section 154.

where others have a right and may reasonably be expected to go for work, business or pleasure, there is a duty to keep wires carrying dangerous voltage properly insulated. But the duty of insulating in the sense of covering the wires, is not absolute, and if a company maintains its wires at such height that it is not reasonable to anticipate that people will come in contact with them, further insulating is not required. (See cases cited in Trimyer v. Norfolk Tallow Company, supra.)

Such is the general duty imposed upon the purveyors of electricity. However, no authority has been cited or found supporting the view that the owner of a power line owes the same high degree of care to its linemen who voluntarily and knowingly work upon power poles carrying dangerous voltage.

It is neither the practice nor custom of a power company to insulate completely all wires or other apparatus at or near the top of power poles according to the undisputed testimony of the safety engineer. The plaintiff knew the line was energized when he ascended the pole to reconnect cutouts and lightning arrestors. He knew it was necessary to blanket properly all wires and apparatus within his working range. Plaintiff's employer, Seal Electric Company, was modernizing an existing power line for the Government in order to permit an increase in voltage from 2300 to 4160 volts. The plaintiff had the duty to inspect and report any defective equipment on the poles. This he did on several occasions. The ratchet wrench that plaintiff was using at the time of the accident was neither taped nor insulated in any manner.

The only evidence of the cause of the accident [4] was permitting (by the plaintiff) the end of the ratchet handle to enter the folds of the protective blanket and come in contact with an existing inadequately taped split-bolt connector, thereby causing a short circuit. Conceding that the Government may have been negligent in failing to insulate properly its wires, it nevertheless plainly appears that that omission could not have been the primary cause of the accident. Contact had to be made with the inadequately taped split-bolt connector, and some other point of contact, necessary to form a circuit (which in this case was the cutout box).

The customary, proper and safe way for a lineman working on the top of a "hot" power pole is to blanket properly all wires and apparatus within his working range and to see that the blankets are secured at all times, a custom well known to the plaintiff who had been engaged in that work for eight years.

So the necessary inference is that the cause of the accident was the failure of the plaintiff to take these obvious precautions for his own safety, coupled with the inadequate insulation of the split-bolt connector.

Thus it appears the contributory negligence of the plaintiff was the proximate cause of his injuries; and in such case, upon familiar and well settled principles, there can be no recovery. See Bowers v. Bristol Gas and Electric Company, 100 Va. 533, 42 S.E. 296. See also Dillingham v. Smith-Douglass Company, supra.

Therefore judgment should be for the defendant and the case dismissed.

Counsel for the Government will prepare an appropriate order in accordance with this memorandum opinion, submit it to counsel for the plaintiff for approval as to form, and it will be entered accordingly.

4. From the accident report prepared and filed by the Superintendent of Seal Electric Company.