Leonard Allen GAULDIN, Appellee,

v.

VIRGINIA WINN–DIXIE, INC., etc., Appellant.

No. 10564.

United States Court of Appeals Fourth Circuit.

Argued Oct. 6, 1966.

Decided Dec. 9, 1966.

---

Edwin B. Meade, Danville, Va. (Meade, Tate & Meade, Danville, Va., on brief), for appellant.

Charles E. Carter, Danville, Va. (Mary H. Williams and Carter & Carter, Danville, Va., on brief), for appellee.

Before BOREMAN, J. SPENCER BELL and WINTER, Circuit Judges.

BOREMAN, Circuit Judge:

This is an action to recover damages for personal injuries which the plaintiff-appellee, Gauldin, suffered when he fell on the floor of a supermarket of Virginia Winn-Dixie (hereinafter Winn-Dixie or defendant), in Danville, Virginia. The jury returned a verdict for the plaintiff in the amount of $1,200.00 and on appeal defendant assigns as error the denial by the trial court of its motions for a di-

rected verdict and its motion for judgment notwithstanding the verdict on the grounds that there was insufficient evidence to establish actionable negligence and, even assuming negligence on the part of Winn-Dixie, plaintiff is barred from recovery because of his contributory negligence.

The evidence reveals that at about noon on February 19, 1965, Gauldin, who was wearing shoes with metal heel taps or plates, entered the defendant's supermarket in order to purchase several items for his wife who remained outside in the car with their two small children. After selecting some grapefruit, Gauldin pushed his cart down the aisle to the egg counter, at which point he remembered that his wife wanted some vaseline or petroleum jelly. He left his cart at the egg counter and went back up the aisle proceeding over the same part of the floor he had traveled in going to the egg counter. After obtaining the desired item Gauldin was returning to his cart, again taking the path he had twice traversed, when he slipped and fell to the floor, landing on his lower back. An ambulance was called and he was removed on a stretcher.

Before the ambulance arrived plaintiff's wife was summoned to the store and she attempted to comfort her husband who was indicating extreme pain. While so occupied Mrs. Gauldin engaged in a brief conversation with several store employees as to the cause of her husband's fall. The evidence as to alleged statements and who made them is conflicting.

Mrs. Gauldin testified that one of the employees told her that her husband had slipped on some grapes or a radish on the floor. Gauldin testified that he heard this conversation and that the employee held up something that looked like a radish and said "this is what he slipped on."

Defendant's evidence is to the contrary. Both the assistant manager, Mr. Tuggle, and the employee in charge of the grocery department, Mr. Rowe, denied that they made any statements to Mrs.

Gauldin concerning the cause of the accident. Neither plaintiff nor his wife could identify the person who made these statements but both stated that it was a third employee, and not Tuggle or Rowe. However, Rowe, who was working eight or ten feet from where Gauldin fell, testified that after Gauldin had been placed on the stretcher and was being taken to the ambulance a customer pointed out a radish which was under a "toe hold" of the egg counter. Rowe took the radish, which was somewhat mashed, to Mr. Tuggle. Tuggle, assisted by Rowe, immediately began an investigation to determine if any of the plastic radish bags were broken open or defective and to inquire of the check-out personnel to learn if they had observed either loose radishes or any customers opening containers. These efforts produced no pertinent information.

Winn-Dixie introduced evidence to show that it attempted to keep the aisles as clear as business and customer traffic would permit. Rowe stated that it was his duty to clean the grocery aisle every hour and to remove foreign objects whenever any were discovered; that he had swept the aisle twenty-five or thirty minutes prior to the accident and, at the time Gauldin fell, he, Rowe, was engaged in his duties tending the vegetable counter with his back turned toward the aisle. Rowe further testified that in the area where Gauldin fell there was a scrape mark on the floor and there was no slippery substance or evidence of a radish at this point. Defendant took the position that the mark was made by plaintiff's metal heel plate.

■ The basic question is whether there was sufficient evidence of negligence to create a question for the jury. We look to the laws of Virginia to determine the extent of the duty and degree of care which defendant, engaged in the business of operating a supermarket, owed to plaintiff as an invitee.

■ Under Virginia law it is well established that an owner or occupier of real property owes to an invitee the duty to exercise reasonable care to make the premises safe. However, such owner or occupier is not an *insurer* of the safety of the premises. He has a duty to warn of hidden dangers or defects in the premises but only to the extent that he has knowledge thereof or should, in the exercise of reasonable care, have such knowledge. When an invitee is injured because of some foreign substance or object on the floor of the premises the owner or occupant is not liable unless it can be shown that he had actual knowledge of the presence thereof or that in the exercise of reasonable care he should have known of its presence and failed in his duty to remove it. Shiflett v. M. Timberlake, Inc., 205 Va. 406, 137 S.E.2d 908 (1964); Colonial Stores, Inc. v. Pulley, 203 Va. 535, 125 S.E.2d 188 (1962); Great Atlantic & Pacific Tea Co. v. Rosenberger, 203 Va. 378, 124 S.E.2d 26 (1962); Safeway Stores, Inc. v. Tolson, 203 Va. 13, 121 S.E.2d 751 (1961); Gall v. Great Atlantic & Pacific Tea Co., 202 Va. 835, 120 S.E.2d 378 (1961); see generally 42 A.L.R.2d 1103, 1104.

■ This duty to use reasonable care to maintain the floors in safe condition applies even in cases where someone other than an employee of the establishment has caused foreign substances or objects to be spilled, dropped or placed on the floor. Great Atlantic & Pacific Tea Co. v. Rosenberger, supra, 124 S.E. 2d at 28. But the invitee has the burden of proving negligence by preponderant evidence and it devolves upon him to show that the owner or occupant either knew, or should have known by the exercise of reasonable care and diligence, of a defect or unsafe condition. The determination of the real issue of the storekeeper's negligence must not be left to speculation and conjecture. See Safeway Stores, Inc. v. Tolson, supra.

■ An analysis of all the evidence reveals that there was not a shred of proof that defendant had actual knowledge of the presence of a radish or any other dangerous object or substance in the aisle of the supermarket. The remaining question is whether defendant, in the exercise of reasonable care and

diligence, should have known of the presence of a radish or other hazard in the aisle.

 The evidence offered by plaintiff to prove constructive notice placed defendant's employee, Rowe, eight to ten feet from the spot where plaintiff fell. But there was testimony to the effect that Rowe, pursuant to his assigned duty, had swept the floor twenty-five or thirty minutes before the accident occurred. There was no evidence as to how long the radish which was later discovered under the egg counter had been there, nor was there any testimony indicating that it should have been seen and removed by an employee. The plaintiff, himself, had twice walked over and upon the floor of that very same aisle within moments before the accident and he saw no dangerous substance or object. Indeed, there is no evidence that a radish was at any time on the traveled portion of the floor of the aisle.

In a similar case the highest court of Virginia set aside a jury verdict for the plaintiff, who slipped and fell in defendant's store, because of lack of supporting evidence. The evidence, while indicating that plaintiff might have slipped on sawdust or sand, contained no proof that the defendant or its agents "actually had knowledge of the presence of the alleged foreign substance or that they should, in the exercise of reasonable care, have had such knowledge." Safeway Stores, Inc. v. Tolson, supra, 121 S.E.2d at 752. The court held that in view of the fact that there was no evidence as to actual or constructive knowledge instructions to the jury on those points were erroneous because they permitted jury speculation as to the cause of the accident.

In Miracle Mart, Inc. v. Webb, 205 Va. 449, 137 S.E.2d 887 (1964), the court distinguished *Safeway Stores* and affirmed a jury verdict for the plaintiff who fell while walking closely behind the defendant's assistant manager. The court's holding was based on two facts which were not present in *Safeway Stores* or the instant case: (1) In *Miracle Mart* the defendant's assistant manager had obstructed plaintiff's view by placing himself between the plaintiff and danger and (2) immediately prior to the accident, walked directly over the foreign substance which caused the accident and the spot where plaintiff slipped. The court reasoned that the jury "had a right to conclude that had the assistant manager of the department been keeping a proper lookout he could have seen this dangerous substance in time to warn the customer of its presence." Miracle Mart, Inc. v. Webb, supra, 137 S.E.2d at 890.

In *Miracle Mart* there were those underlying facts to support the jury's finding of negligence. In the instant case there are no such facts to support such a finding. To permit the jury to conclude that Rowe, who was engaged in his duties eight to ten feet from the point of the accident, should have been on a constant alert for a radish on the floor of the aisle which he had so recently swept and to the point of neglecting his duty to tend the display counters, would extend *Miracle Mart* beyond its peculiar facts and would, in effect, make the defendant an insurer of the safety of its customers. The verdict was without competent evidence to support it and the trial judge should have directed a verdict for the defendant or should have granted the defendant's motion for judgment notwithstanding the verdict.[1] We reverse the judgment below and enter final judgment for the defendant.

Reversed.

---

1. Although no question was raised below or here as to jurisdiction we entertain grave doubt as to federal jurisdiction in this diversity action. Our doubt is not based upon the fact that plaintiff was awarded damages of only $1,200 while suing for $15,000. The test for determining jurisdiction based upon the amount involved is primarily one of good faith. However, before dismissal of an action it must appear to a legal certainty that the plaintiff cannot recover the amount claimed. The mere fact that a lower amount is awarded does not establish bad faith. Horton v. Liberty Mut. Ins. Co., 367 U.S. 348, 81 S.Ct. 1570, 6 L.Ed.2d 890 (1961);

Bell v. Preferred Life Assur. Society, 320 U.S. 238, 64 S.Ct. 5, 88 L.Ed. 15 (1943); St. Paul Mercury Indemnity Co. v. Red Cab Co., 303 U.S. 283, 58 S.Ct. 586, 82 L.Ed. 845 (1938); McDonald v. Patton, 240 F.2d 424 (4 Cir. 1957). Here, plaintiff's medical and hospital expenses and his loss of earnings amounted only to approximately $500.00 although admittedly there was the additional claim of damages for present and future pain and suffering. Following a short period, according to the evidence, plaintiff had returned to his former job and was no longer under a doctor's care. Our attention is drawn to this situation because of the ever-increasing case load and congested condition of the dockets of both the District Courts and the Courts of Appeals. Congress acted to raise the federal jurisdictional amount from $3,000 to $10,000, undoubtedly intending to relieve the federal courts of litigation of relatively minor importance. In cases where the plaintiff's actual damages are small and his injury clearly appears slight, the District Court should carefully scrutinize the special damages and the offers of proof. A vigorous, aggressive and intelligent inquiry at the pre-trial stage and the dismissal because of the lack of jurisdiction where warranted will, it is hoped, have the salutary effect of discouraging the institution of actions in the federal courts where it is clearly apparent that the plaintiff has arbitrarily and without justification alleged damages equal to or in excess of the statutory amount so that he may invoke the jurisdiction of a federal court.