**Mary GOLDEN, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**Civ. A. No. 6296.**

United States District Court
E. D. Virginia,
Norfolk Division.

March 21, 1968.

Brydges, Broyles & McKenry, H. Calvin Spain, Virginia Beach, Va., for plaintiff.

Roger T. Williams, Asst. U. S. Atty., Norfolk, Va., for defendant.

## MEMORANDUM ORDER

KELLAM, District Judge.

Plaintiff instituted this action under the provisions of Title 28 U.S.C.A. §

1346, § 2674, etc., known as the Federal Tort Claims Act, to recover damages from the United States for alleged negligence in not removing snow from a parking area at the Post Exchange at the Naval Air Station at Oceana, Virginia Beach, Virginia.

There is no dispute about the facts. As will hereafter appear, the weather conditions prevailing played a substantial part in determining liability in the case. The weather was described in oral evidence and set forth in the weather records filed herein. From January 26th through January 30th, 1966, there was considerable snowfall. It commenced snowing on January 25th, but most of this melted as it fell. On January 26th there was an accumulation of snow of about 4 inches. Snow fell again on the 27th, and the accumulation was to a depth of about 6 inches. It melted considerably during the afternoon, so that at about 6 o'clock P.M. there was only an accumulation of about 3 inches. Late in the afternoon of January 29th, an additional 4 inches of snow fell, so that there was an accumulation of 5 to 6 inches. There was a light snowfall again on the 30th, and the temperature varied between 13 degrees and 28 degrees above zero. On January 31st, the depth of the snow was 5 inches, and the temperatures ranged between 12 and 32 degrees above zero.

On January 31st, 1966, at about 9:00 o'clock A.M. plaintiff, a Navy dependent wife, went to the Air Station to obtain treatment and medication for her child. Upon leaving the dispensary she decided to go to the Post Exchange to obtain some school supplies for her daughter. She parked her car in the parking area provided for use of persons using the Post Exchange at a distance (which she estimated by pointing) about 30 feet from the entrance to the Exchange. She left her car and had only walked in the snow approximately 10 feet (again she estimated by pointing to objects in the courtroom) when she fell and broke her wrist. She said there was an accumulation of ice under the snow. There is no doubt she suffered a painful injury. She was treated at the Naval Hospital in Portsmouth. The medical records of that Hospital and doctors' reports are filed as exhibits.

Plaintiff urges that defendant was negligent in not cleaning the snow from the parking area of the Post Exchange, and that as a result of such negligence, she was caused to fall. Defendant set up a claim of contributory negligence, assumption of risk, and that defendant had not had sufficient time to clean the snow from said area.

The Naval Air Station at Oceana is what is called an All-weather Jet Air Base. It must at all times be ready for any type alert. Jet planes must be able to take off and land at any and all times. Hence, the runways, taxiing areas, and parking areas must be accessible. The runways must be free of snow and ice. The Director of Transportation at the Base testified that there are two primary runways and two secondary runways, totaling about 15 miles of runways and taxi areas; that the main runway is over two miles long; that the runways are 175 feet wide and the taxi areas 75 feet wide; that snow must be kept clear of the runways so that pilots can see the runway lights in order to land; that quick landing must be available because the planes do not have sufficient fuel to remain aloft. Runways take top priority, and he testified that his department worked 24 hours a day on January 26th, 27th, 28th, 29th, 30th, and 31st, trying to clear the snow from the runways and keep them clear, but that he was not even able to keep the number one runway clear. Every piece of snow equipment at the Base was in use. In fact, he said that as a result of the 24 hour use of the equipment, every piece of it was "beat to pieces." His was the only area on the East Coast which could take aircraft; and civilian, Army, and private planes came to this Base to land because no other bases were open and able to permit landing. Snow was cleared from the street leading from the dispensary to the main highway, so that access

would be available to the highway in the event of some disaster. Other equipment was putting sodium chloride on the streets. He said putting sodium chloride on the parking area would have accomplished nothing. He further said that the snow was so great that before they could clear a given area, the snow would again cover the part of the area just cleaned. It was an unusual snowfall. The equipment available was normally sufficient to meet the requirements, but not at this time. The snow was 4½ to 5 feet deep, in drifts.

Government's Exhibit 1 is a copy of the Base publication showing pictures of the snowy conditions which prevailed at the time of the accident.

There are no contradictions in the evidence, hence credibility of witnesses is not an issue. The only question is, does the evidence establish actionable negligence on the part of defendant? If not, the case ends here. If it does, then we have to go further and determine whether plaintiff was guilty of contributory negligence which proximately contributed to the accident and injury, or whether she assumed the risk.

 Plaintiff was an invitee and as such defendant owed her the duty to exercise ordinary care to have its premises in a reasonably safe condition at the place she had a right to be. Shiflett v. M. Timberlake, Inc., 205 Va. 406, 137 S.E.2d 908, 910 (1964); Miracle Mart, Inc. v. Webb, 205 Va. 449, 137 S.E.2d 887, 890 (1964); Gauldin v. Virginia Winn-Dixie, Inc., 370 F.2d 167 (4th Cir. 1966); Gaitskill v. United States, 129 F.Supp. 621, 623 (D.C.Kansas 1955);[1] Taylor v. United States, 108 F.Supp. 751, 752 (D.C.Kansas 1952);[2] United States v. Trubow, 214 F.2d 192 (9th Cir. 1954). The liability of the United States is judged in the same manner as liability of an individual is judged under state law. Hess v. United States, 361 U.S. 314, 318–319, 80 S.Ct. 341, 4 L.Ed.2d 305.

 Even conceding arguendo that the defendant was obligated to remove the snow from the parking lot, and that a failure so to do was negligence, it was entitled to a reasonable time after the storm ceased within which to do it. It is clear from the evidence that defendant had not had sufficient time after the storm ceased to remove the accumulation of snow from the runways. Men and equipment were working 24 hours each day. It seems to be the established rule that where one is required to remove snow or ice from areas used by tenants, invitees or others, a reasonable time under the then existing circumstances must be allowed for the performance of the task. Langhorne Road Apartments, Inc. v. Bisson, 207 Va. 474, 150 S.E.2d 540, at 542; Walker v. Memorial Hospital, 187 Va. 5, 45 S.E.2d 898, 902; Smith v. District of Columbia, 89 U.S. App.D.C. 7, 189 F.2d 671, 674 (1951); Annot., 39 A.L.R.2d 782, 815; Annot., 26 A.L.R.2d 610, 633.

While defendant had not closed the Post Exchange, as plaintiff suggested it should have done, all personnel at the Base were excused from reporting for duty, except "key personnel" and persons working in trying to clear the snow. The intensity of the storm is best described by the fact that plaintiff wanted to bring her daughter, who was ill, to the dispensary, but delayed the trip from January 30th to the 31st.

Since the circumstances establish there was no negligence on the part of the defendant, the plaintiff is not entitled to recover, and the action is dismissed.

1. Wife of patient at VA Hospital fell on ramp used for entrance to living quarters assigned to her because of failure to clear snow from the ramp. Recovery permitted.

2. Fall in post office from alleged melting of snow tracked in. Recovery denied.