Walter B. VANDERGRIFT, Administrator of the Estate of Walter James Vandergrift, Deceased, Plaintiff,

v.

UNITED STATES of America, Defendant.

Civ. A. No. 77–197–N.

United States District Court, E. D. Virginia, Norfolk Division.

March 30, 1978.

See also, D.C., 500 F.Supp. 237.

George H. Gray, Outland, Gray, O'Keefe & Hubbard, Chesapeake, Va., for plaintiff.

Stephen Wainger, John F. Kane, Asst. U. S. Attys., Norfolk, Va., Dennis L. deLeon, Trial Atty., Torts Branch, Civil Division, U. S. Dept. of Justice, Washington, D. C., for defendant.

## OPINION

KELLAM, District Judge.

Plaintiff seeks to recover damages from the United States for the death of plaintiff's decedent, Walter James Vandergrift (James), caused by his fall through the roof of Building 643 at the Langley Air Force Center on March 29, 1976.

The United States contracted with Mechanical Products, Inc. (Mechanical) for the performance of certain construction and installation work at Langley Field. Mechanical subcontracted a portion of the work to Sullivan Mechanical Contractors, Inc. (Sullivan), including the installation of ducts for the air vent system being installed in Building 643. Plaintiff's decedent was an employee of Sullivan. Almost a year prior to James' accident, Sullivan had performed some of its contract work, but ceased work because Mechanical had failed to make payment for the work performed pursuant to contract. Shortly before James' fall, Sullivan had agreed to and did return to the job.

Installation of the ductwork in Building 643 required James and others to go upon the roof of the building in order to cut a hole in the roof and install a vent. Access to the roof was available through a permanently fixed ladder leading to a platform, and a door opening from that platform onto the roof. This was the means used on March 29, 1976. On the day of the accident, James went with Herbert King, whom he was assisting, to the roof to cut the hole for the air vent. While there, the roof gave way and James fell through the roof some 75 feet to the floor of the building, sustaining injuries, from which he later died on April 3, 1976.

The basic contentions of plaintiff are that the roof in question was defective and dangerous, known to the defendant to be unsafe and dangerous, and although defendant knew Sullivan would be required to go upon that roof to perform its contract, it negligently failed to give any notice or warning of the known unsafe condition.

The issues are two, first, was the defendant negligent in failing to give warning of a known unsafe condition of the roof when it had knowledge workmen would be required to go upon that roof to perform the work contracted to be done, and if so, the amount of damages suffered.

### I

It is stipulated between the parties that the Court has jurisdiction of this action; that James fell through the roof of Building 643 at Langley Research Center, Langley Field, on March 29, 1976, and that he died on April 3, 1976, from the injuries received in such fall; that at the time of the fall James was in the employ of Sullivan, a subcontractor of Mechanical; that James was working in the scope of his employment, doing work required by the general contractor; that the contract of June 11, 1974, between Mechanical and United States, for the performance of the work which James was doing did not contain any provision setting forth the finding made by an examination and survey of the roof in question in 1966, was dangerous and should not be used to support the weight of a workman. Nor did the contract contain any provision or notice of the recommendation of the 1966 survey which recommended that any contract work to be done requiring entry upon the roof to contain a requirement that the contractor submit to the contracting officer for approval a description of the method to be used for spanning catwalks between trusses and between purlins capable of bearing the weight of workmen, materials and equipment so as not to place weight on the corrugated cement asbestos board roof. Nor did the contract provide that safety precautions, safety lines, barricades or signs were to be provided as required by the Safety Manual of the Corps of Engineers. At time of trial defendant stipulated that the part of the roof which was not part of the overlap and which was not supported by the beams, was unsafe to walk on.

The following facts are established by the evidence.

(a) Sullivan was a subcontractor of Mechanical, and had worked at various times

on the project in question. Sullivan had worked the week prior to the occasion when James' accident occurred.

(b) On the day of the accident James was assisting Herbert King in cutting a hole in the roof of Building 643. King, one Harris and James, after gaining access to the roof by way of the ladder, platform and door abovementioned, walked down the valley of the roof and up towards its peak. King had told Harris and James to walk where they thought the beams were. However, the overlaps were staggered, so they were not necessarily supported directly beneath by the beams.

(c) As James was walking from the valley towards the peak of the roof, where he and the others had previously walked, up to where King was working, one of the cement asbestos panels gave way and he fell some 75 feet.

(d) The specifications in an earlier contract between defendant and Roof Engineering Corporation of April 29, 1966, established knowledge of the condition of the roof on the part of defendant, for that contract specified that the roof had deteriorated and should not be used to support a workman. Nothing had been done to the roof to change its condition between that date in 1966 and the date of the accident.

(e) Further, the weakness of the roof was known through the fact that a moderate snow load would cause parts of the multi-level roof to cave in. The Facility Coordinator testified it was common knowledge "to anyone who worked in our facility" that Careystone, the material on the roof, "would not support your weight." [Tr. of Ev. p. 231].

(f) Bowie, the Technical Project Engineer for the rehabilitation of Building 643, knew that Sullivan was the subcontractor for the ductwork on the building; that he had earlier submitted shop drawings for part of the work; that the work required the men to go upon the roof. An inspector was required to check the building each day during working hours to determine what work was being done on contracts, and the inspector assigned to Building 643 for the work in question knew that work was to be done on the roof.

(g) There was nothing in or on any of the drawings, contracts, specifications or other papers furnished Sullivan or its employees to give notice or an indication of any dangerous condition of the roof. Sullivan's personnel could observe no dangerous condition in or on the roof. Some of them had been on the roof in the area of the accident before. There was no sign posted at or near the door leading to the roof to give warning. Though in the past the door had been locked to prevent access to the roof, there was no lock on it the day of the accident, and there had not been one there for a long period of time.

(h) Some notice had been given to Mechanical's workmen not to walk on the roof without some reinforcement being provided, but this did not refer to the roof where Sullivan was working, and Sullivan's employees were not so advised.

(i) Defendant knew that Sullivan was a subcontractor of Mechanical and would be required to go on the roof, but was never given notice of the condition of the roof. Not only did defendant know Sullivan was a contractor and that its employees were working in Building 643 and required to go on the roof, it never gave notice of the known defective condition of the roof.

## II

Plaintiff's action is grounded in the provisions of the Federal Tort Claims Act, 28 U.S.C. § 2674, jurisdiction being pursuant to 28 U.S.C. § 1346(b). The United States is thus made liable for personal injury or death caused by the negligent or wrongful act or omission of an employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person would be liable to the claimant in accordance with the law of the place where the act or omission occurred. 28 U.S.C. § 1346(b) and 28 U.S.C. § 2674. The accident in issue having occurred in Virginia, the law of Virginia is to be applied.

*United States v. Muniz*, 374 U.S. 150, 83 S.Ct. 1850, 10 L.Ed.2d 805 (1963); *Richards v. United States*, 369 U.S. 1, 82 S.Ct. 585, 7 L.Ed.2d 492 (1962); *Massachusetts Bonding & Insurance Co. v. United States*, 352 U.S. 128, 77 S.Ct. 186, 1 L.Ed.2d 189 (1956); *Jennings v. United States*, 374 F.2d 983 (4th Cir. 1967); *Murray v. United States*, 329 F.2d 270 (4th Cir. 1964). The Act is to be invoked only on a negligent or wrongful act. If negligence is not shown, the action does not arise under the Act. *Laird v. Nelms*, 406 U.S. 797, 92 S.Ct. 1899, 32 L.Ed.2d 499 (1972); *Dalehite v. United States*, 346 U.S. 15, 73 S.Ct. 956, 97 L.Ed. 1427 (1953). When an agency of the United States undertakes a task, it must perform the task with due care. *Rogers v. United States*, 397 F.2d 12 (4th Cir. 1968). The Virginia law is the same. *City of Richmond v. Virginia Bonded Warehouse Corp.*, 148 Va. 60, 138 S.E. 503, 507. *See also Conowingo Power Co. v. State of Maryland*, 120 F.2d 870 (4th Cir. 1941). One is entitled to assume another party will perform his duty, and may act upon such until the contrary appears or reasonably should appear. *Harris Motor Line v. Green*, 184 Va. 984, 37 S.E.2d 4 (1946).

■ An employee of a contractor or subcontractor who is upon the premises performing work which the owner has contracted for is there as an invitee at the places where he is authorized to be. *Trimyer v. Norfolk Tallow Co.*, 192 Va. 776, 66 S.E.2d 441; *Davis Bakery v. Dozier*, 139 Va. 628, 124 S.E. 411; *Kalopodes v. Federal Reserve Bank of Richmond*, 367 F.2d 47 (4th Cir. 1966); *Glasscock v. United States*, 207 F.Supp. 318 (D.C.Va.1967), aff'd 323 F.2d 589 (4th Cir. 1963); *Dillingham v. Smith–Douglass Co.*, 261 F.2d 267 (4th Cir. 1958); *Hogge v. United States*, 354 F.Supp. 429, 432 (D.C.Va.1972). An owner and occupier of premises owes the duty to an invitee to exercise reasonable care to make the premises reasonably safe for his visit. He is not an insurer of the safety of the invitee. The duty to protect the invitee is coextensive with the invitation. *Shiflett v. M. Timberlake, Inc.*, 205 Va. 406, 137 S.E.2d 908 (1964); *Miracle Mart, Inc. v. Webb*, 205

Va. 449, 137 S.E.2d 887 (1964); *Acme Markets v. Remschel*, 181 Va. 171, 24 S.E.2d 430 (1943); *Gauldin v. Winn–Dixie, Inc.*, 370 F.2d 167 (4th Cir. 1966); *Nolan v. United States*, 186 F.2d 578 (4th Cir. 1951); *Barnhart v. American Oil Co.*, 237 F.Supp. 492 (E.D.Va.1965), aff'd 354 F.2d 659 (4th Cir.); *Golden v. United States*, 282 F.Supp. 364 (E.D.Va.1968). The liability of the United States is judged for negligence in this regard in the same manner as liability of an individual is judged under the state law. *Hess v. United States*, 361 U.S. 314, 318, 80 S.Ct. 341, 345, 4 L.Ed.2d 305 (1960).

■ An invitee has a right to assume that the premises are reasonably safe for his lawful use, and in the absence of knowledge or warning of danger, is not required to be on the lookout for danger beyond the exercise of ordinary care. The owner has the duty to warn of hidden dangers or defects in the premises to the extent that he has knowledge thereof, or should, in the exercise of reasonable care, have such knowledge. Actual or constructive knowledge on the part of the owner of a defect causing the injury is necessary to render him liable in damages. *Miracle Mart, Inc. v. Webb, supra; Shiflett v. M. Timberlake, Inc., supra; Culpepper v. Neff*, 204 Va. 800, 134 S.E.2d 315, 319 (1964); *Gauldin v. Winn–Dixie, Inc., supra; Kalopodes v. Federal Reserve Bank of Richmond, supra.* While the owner must give notice or warning of an unsafe condition which is known to him and is unknown to the invitee, "such notice is not required where the dangerous condition is open and obvious, and is patent to a reasonable person exercising ordinary care for his own safety." *Culpepper v. Neff, supra*, 134 S.E.2d at 319, and cases there cited; *Balderson v. Robertson*, 203 Va. 484, 125 S.E.2d 180, 183 (1962); *Gottlieb v. Andrus*, 200 Va. 114, 104 S.E.2d 743, 746 (1958); *Trimyer v. Norfolk Tallow Co.*, 192 Va. 776, 66 S.E.2d 441, 443 (1951); *Acme Markets v. Remschel, supra; Glasscock v. United States*, 207 F.Supp. 318 (E.D.Va. 1962), aff'd 323 F.2d 589; *Nolan v. United States*, 186 F.2d 578 (4th Cir. 1951). To hold the property owner liable, it must be

shown the owner had knowledge of the alleged unsafe condition of the premises, or that it had existed for such a length of time as to make it the owner's duty in the exercise of ordinary care to have discovered it. *Cannon v. Clarke*, 209 Va. 708, 167 S.E.2d 352, 355 (1969); *Culpepper v. Neff*, 204 Va. 800, 134 S.E.2d 315, 318 (1964). That is, the owner knew or should have known of it. *Glasscock v. United States, supra.* Here, the plaintiff must establish that the United States was negligent and that such negligence was a proximate cause of the accident, and resulting injury. *United States v. Moran Towing and Transportation Co.*, 409 F.2d 961 (4th Cir. 1969); *Glasscock v. United States, supra.* The issues of negligence and proximate cause are for the trier. *Motley v. Doe*, 210 Va. 428, 171 S.E.2d 818, 821 (1970); *Biggs v. Martin*, 210 Va. 630, 172 S.E.2d 767 (1970); *Iatomasi v. Rhodes*, 407 F.2d 498 (4th Cir. 1969); *Nuckoles v. F. W. Woolworth Co.*, 372 F.2d 286 (4th Cir. 1970).

■ Defendant had knowledge that Sullivan was a subcontractor for the sheet metal and ductwork, and therefore owed a duty to warn someone in authority at Sullivan's of the danger on the roof on which Sullivan's workmen were to be working. This duty to warn is nondelegable, at least in the sense that the owner's responsibility is not abrogated by contracting for its performance by another. *See Raich v. Aldon Construction Co.*, 129 Cal.App.2d 278, 276 P.2d 822 (1954); *Giarratano v. Weitz Co.*, 259 Iowa 1292, 147 N.W.2d 824 (1967); *Oden Construction Co. v. McPhail*, Miss., 228 So.2d 586 (1969). While the Court in *Gulf Oil v. Bivins*, 276 F.2d 753 (5th Cir. 1960), cert. den. 364 U.S. 835, 81 S.Ct. 70, 5 L.Ed.2d 61, reh. den. 364 U.S. 906, 81 S.Ct. 231, 5 L.Ed.2d 199, held that the owner of land adequately performed his duty to warn the employee of an independent contractor working on the premises by giving the warning of the danger to the employee's superior in charge of the employee concerned, the Court in *Carey v. U. S.*, 183 F.Supp. 727 (M.D.N.C.1960) held that the duty to warn was *not* discharged by merely telling a superior to give the information to the workman, but only by telling the work-

man directly. However, in this case, no warning was given, either to Sullivan, or to any Sullivan employee directly.

■ When a warning is given, it must be given in a reasonably effective way, sufficient to apprise all invitees working in the area of the danger involved. *Knight v. Moore*, 179 Va. 139, 18 S.E.2d 266 (1942). "An insufficient warning has the same legal consequences as no warning at all." *Kalopodes v. Federal Reserve Bank of Richmond*, 367 F.2d 47, 50 (4th Cir. 1966). *See Sadler v. Lynch*, 192 Va. 344, 347, 64 S.E.2d 664 (1951).

### III

■ In an action under the Federal Tort Claims Act, it is the duty of the Court to find the facts. The duty performed by a jury to weigh the evidence, determine the credibility of the witnesses, and make a finding within the framework of the law is thus cast upon the Court. Only when reasonable men cannot differ as to the conclusion of facts to be drawn from the evidence, does it become a question of law. If the conclusion is dependent upon the weight to be given the testimony, the trier of the facts is to pass upon conflicting and inconsistent statements, to discard or accept the testimony or any part thereof of any witness, and determine all issues. Negligence, contributory negligence and proximate cause are thus for the trier of the facts. *Motley v. Doe*, 210 Va. 428, 171 S.E.2d 818, 821 (1970); *Clifton v. Gregory*, 212 Va. 859, 188 S.E.2d 203, 206 (1972); *Mitchell v. Lee*, 213 Va. 629, 194 S.E.2d 737, 739 (1973); *Williams v. Peters*, 213 Va. 652, 194 S.E.2d 713, 717 (1973); *Iatomasi v. Rhodes*, 407 F.2d 498 (4th Cir. 1969); *Harner v. John McShain Inc., etc.*, 394 F.2d 480 (4th Cir. 1968); *Nuckoles v. F. W. Woolworth Company*, 372 F.2d 286, 288 (4th Cir. 1967); *Mandro v. Vibbert*, 170 F.2d 540 (4th Cir. 1948); *Hubbard v. United States*, 295 F.Supp. 524 (E.D.Va.1969); *Dunkley v. Thaxton*, 274 F.Supp. 723 (W.D.Va.1967).

## IV

It is abundantly clear from the evidence that defendant knew the roof [except over the beams] would not bear the weight of a workman. It had known of this condition since 1966. Such was a latent defect known to defendant. It was not open and obvious to one exercising due care.[1] No written or verbal warning was given to plaintiff's decedent, or his co–workers, or his employer, Sullivan. Defendant knew the employees of Sullivan were working on the premises of Building 643, and were on notice they were or would be working on the roof of that building. With knowledge of the condition of the roof and that workmen would be and were working on it, no attempt was made to give notice to innocent workmen. For instance, no provision was included in the contract, specifications or plans concerning the condition of the roof.[2] The door to the roof was unlocked. No notice of any kind was posted at or near the door or the ladder leading to that door of any danger or warning not to walk on the roof. Defendant observed Sullivan's employees on the job in Building 643. They had been there the week prior to the accident. Defendant knew they were to install the vent through the roof and that to do so would require entry on the roof. The evidence discloses the most flagrant kind of negligence on the part of defendant. With actual knowledge of the defective condition of the roof by defendant, Sullivan's men were expected to go upon that roof to work, and they had no knowledge of any defective condition. Such defective condition was not open or obvious to one exercising due care. No notice, warning or information of the known existing danger was given.

## V

While the defendant asserts it was not advised Sullivan was a subcontractor of Me-

chanical, and had no proper notice that employees of Sullivan were on the premises, the credible evidence, the facts and circumstances, and inferences to be drawn therefrom, are sufficiently clear to show otherwise, and to put the United States on notice that Sullivan's employees were subcontractors, and were performing services under a subcontract with Mechanical. Sullivan's workmen had been on the job at various times for over a year, and had been on duty working in Building 643 for numerous days prior to the accident. Inspectors and other Government personnel charged with the security of that building and the performance of the work thereon were in and out of that building on numerous occasions while Sullivan's employees were performing services, and had numerous conversations with them. Sullivan had submitted and United States had approved shop drawings for portions of the work. Government inspectors and security personnel testified it was their duty to see that all workmen wore badges and they had and did observe Sullivan's workmen, but say they failed to observe they were not wearing badges. Sullivan, as it was required to do under the contract, had submitted shop drawings of the vent which was to be run through the roof. These shop drawings, submitted to and accepted by the defendant, showed they were prepared for use by Sullivan. Actually, Sullivan had done work on the roof almost a year prior to the accident. In addition, one of the inspectors for the defendant became aware of the fact that Sullivan was performing work on the contract as early as August 1975, and he said he was aware of the fact that work was to be done on the roof of the aforementioned building.

It was suggested by one of the Government employees that the area where plaintiff's decedent fell was an isolated area. It is difficult to understand how inspectors

---

1. Some three witnesses testified directly there was nothing to indicate any defective condition in the roof. It appeared to them as safe to walk on.

2. There was evidence Schrum, former Facility Coordinator at Building 643, told Klinefelter, retired Supervisor of Mechanical, not to walk

on the roof, but at a different location. Klinefelter allegedly told Eason, of Mechanical, not to walk on the roof without using planks or plyboard. Klinefelter retired in 1975. A verbal notice to one supervisor would hardly be notice to employees of many subcontractors.

and Government personnel charged with the security of that building, who made inspections several times a day of the work being done on and in the building, did not notice that Sullivan's employees were not wearing badges, particularly, when it was part of their duties to be certain all employees were wearing badges. Government inspector Topping testified at a hearing held the day after the accident that he knew Sullivan's workmen were on the job and that he talked to Sullivan's employees. Inspector Veneris testified it was his duty to check the building to see what contractors or subcontractors were on the job. He said he told another of the inspectors that Sullivan's men were working on the job in Building 643; that Sullivan's men were there most every day and the inspector would come in to see them. The Facility Engineer, Bowie, testified he knew Sullivan was doing the vent work on the job and that Sullivan was a subcontractor for Mechanical. He learned this in early 1975.

To suggest United States did not know Sullivan was a subcontractor, and performing work under the contract of Mechanical, and that United States owed no duty to plaintiff's decedent, is to completely disregard the evidence.

### VI

■ Having determined that the United States was guilty of negligence which was the proximate cause of the accident, and that plaintiff's decedent was free from any negligence which was a contributing cause to the accident, we turn to the issue of damages.

The monetary damages incurred in the hospitalization of James between the period of the accident and his death amounted to $4,650.00. The funeral expenses amounted to $3,860.80. The determination of the other items and elements of damages are more difficult:

James was 20 years old at the time of his death. He had an average life expectancy of 49.5 years. From his employment he was earning a basic rate of some $3.90 per hour. For a 40 hour week he would earn $156.00,

or $8,112.00 per annum. He was survived by his father, mother and a twin brother. He was a young, energetic person, a good worker, and conscientious about his work. The family ties were close and there existed a close relationship between James and the other members of the family.

■ In fixing damages in a death action under the Act in Virginia, the trier of the facts is to fix such an award as "may seem fair and just," Virginia Code 8–636.1, now 8.01–52, taking into consideration (a) sorrow, mental anguish, and solace which may include society, companionship, comfort, guidance, kindly offices and advice of the decedent, (b) compensation for reasonably expected loss of income of the decedent, and services, protection, care and assistance provided by the decedent, (c) expenses for the care, treatment and hospitalization of the decedent incident to the injury resulting in death, and (d) reasonable funeral expenses. Virginia Code 8–636.1, now 8.01–52. As used in the statute, the terms "fair" and "just" are to be given broad and liberal construction. *Pugh v. Yearout*, 212 Va. 591, 186 S.E.2d 58, 61 (1972); *Eisenhower v. Jeter*, 205 Va. 159, 164, 135 S.E.2d 786, 789 (1964). There is no evidence James contributed to the financial support of his family. However, the Court said that under the broad language of the statute, "any 'pecuniary loss' suffered by the statutory beneficiaries is clearly a proper element of damage," *Gough v. Shaner, Admr.*, 197 Va. 572, 90 S.E.2d 171, 176, but in the later cases of *Pugh v. Yearout, supra; Denby v. Davis*, 212 Va. 836, 188 S.E.2d 226; and *Claar v. Culpepper*, 212 Va. 771, 188 S.E.2d 86, in dealing with the question of financial or pecuniary loss sustained by the dependents under the former statute, Virginia Code 8–636, the Court held that absent evidence of contribution or the monetary value of services rendered a dependent, there could be no award for loss of services. However, among the losses to be considered are the loss of services, nurture and care, and other advantages and benefits of a pecuniary nature which probably will be lost in the future. *Gough, supra; Wilson v. Whitta-*

**237**

*ker,* 207 Va. 1032, 154 S.E.2d 124; *Matthews v. Hicks,* 197 Va. 112, 87 S.E.2d 629; *Pugh v. Yearout, supra.*

Fixing damages in a death case where the measure is what is fair and just, like in personal injury actions, is to be determined from all of the facts and circumstances. As the Court said in *Sea–Land Services, Inc. v. Gaudet,* 414 U.S. 573, 590, 94 S.Ct. 806, 817, 39 L.Ed.2d 9 (1974), damages for loss of society can be left to turn mainly upon the good sense and deliberate judgment of the trier, as "insistence on mathematical precision would be illusory," and the judge or jury must be allowed to make a reasonable approximation guided by judgment and practical experience. It is enough if the evidence shows the extent of damages as a matter of a just and reasonable inference, although the result be only an approximation. *Story Parchment Co. v. Paterson Parchment Paper Co.,* 282 U.S. 555, 563, 51 S.Ct. 248, 250, 75 L.Ed. 544 (1931); *Great Coastal Express v. Int. Brotherhood of Teamsters, etc.,* 511 F.2d 839, 845 (4th Cir. 1975).

Guided by the facts and circumstances of the case and the evidence presented, there is awarded as damages $183,511.40 to be distributed among the beneficiaries as follows:

(a) To the father, Walter B. Vandergrift, the sum of $4,650.60 to cover the sums for care, treatment and hospitalization of James, and the sum of $3,860.80 to cover the funeral expenses

(b) To Walter B. Vandergrift, father — $70,000.00
To Brondina T. Vandergrift, mother — $70,000.00
To Nicholas J. Vandergrift, brother — $35,000.00

Under the provisions of the Federal Tort Claims Act, the Court must fix the fee to be allowed counsel out of said recovery. The Court will reserve this issue until counsel and the Court can confer. Counsel are requested to contact the Court within ten days so that a proper judgment may be entered in this case.